IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

JAN TAYLOR, et al.                                                    PLAINTIFFS

V.                            NO. 08-5170

ANB BANCSHARES, INC., et al.                                  DEFENDANTS

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This matter comes before the Court on Plaintiffs' Motion for Class Certification and

Appointment of Class Counsel, pursuant to Fed.R.Civ.P. 23(a) and (b)(1) and 23(g).  (Doc. #88).

By Order entered on August 6, 2010, United States District Judge Robert T. Dawson referred this

motion to the undersigned for a Report and Recommendation.  (Doc. #124).  For the following

reasons, the undersigned recommends that the motion be granted.

### I.  Factual Background

Plaintiffs bring this action pursuant to the Employee Retirement Income Security Act,

29 U.S.C. § 1001 *et seq*. ("ERISA"), against various alleged fiduciaries of the ANB Financial,

N.A. ("ANB") Employee Stock Ownership Plan ("Plan").  They claim that Defendant fiduciaries

breached certain duties they owed to the Plan and its participants.[1]

---

[1]Plaintiffs brought suit under § § 404(a)(1), 409, 502(a)(2), 29 U.S.C. § § 1104(a)(1), 1109, 1132(a)(2).

29 U.S.C. § 1104(a)(1) provides: Subject to sections 1103(c) and (d), 1342, and 1344 of this title, a fiduciary
 shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries...

29 U.S.C. § 1109 provides: (a) Any person who is a fiduciary with respect to a plan who breaches any of the
 responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to
 make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any
 profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be

AO72A
(Rev. 8/82)

Simply stated, Plaintiffs assert four claims for relief in their First Amended Complaint:

**Claim I** - Claim for Breach of Fiduciary Duty against Trustee Defendants, ANB Bancshares ("Bancshares") and FDIC - Imprudent Investment of Plan Assets;

**Claim II** - Claim for Breach of Fiduciary Duty Against Trustee Defendants, Bancshares and FDIC - Fiduciary Affirmative Misrepresentations;

**Claim III** - Claim for Breach of Fiduciary Duty Against Trustee Defendants, Bancshares and FDIC - Fiduciary Nondisclosure;

**Claim IV** - Claim for Breach of Fiduciary Duty Against Director Defendants, Bancshares and FDIC - Failure to Monitor Fiduciary Performance.

In their prayer for relief, Plaintiffs ask the Court to:

- Certify this action as a class action pursuant to Fed.R.Civ.P. 23;
- Declare that the Defendants have breached their ERISA fiduciary duties to the Plan's participants and beneficiaries;
- Issue an order compelling the Defendants to make good to the Plan or to a successor trust all losses to the Plan resulting from these breaches, including, but not limited to, lost principal and lost return on investments that would have resulted from prudent and diversified investment of the Plan's assets;
- Award such other equitable or remedial relief as may be appropriate, including the permanent removal of the Defendants from any positions of trust with respect to the Plan and the appointment of independent fiduciaries to administer the Plan;
- Enjoin Defendants, and each of them, from any further violations of their ERISA fiduciary responsibilities, obligations, and duties;
- Order Defendants or their successor fiduciaries to allocate the Plan's recoveries to the accounts of all Plan participants who had any portion of their account balances invested in stock of ANB Bancshares, in proportion to the accounts' losses attributable to the investment in stock of ANB Bancshares;
- Award Plaintiffs their attorneys' fees and costs pursuant to ERISA § 502(g), 29 U.S.C.'s 1132(g) and/or the Common Fund doctrine; and
- Award such other and further relief as the Court deems equitable and just.

(Doc. #43 at pgs. 19-20).

---

subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary. A fiduciary may also be removed for a violation of section 1111 of this title.

29 U.S.C. § 1132(a)(2) provides: A civil action may be brought by the Secretary, or by a participant, beneficiary or fiduciary for appropriate relief under section 1109 of this title;...

AO72A
(Rev. 8/82)

Plaintiffs move the Court for certification of a class defined as follows:

> All participants in the ANB Financial, N.A. Employee Stock Ownership Plan ("the Plan") for whose individual accounts the Plan held shares of stock of ANB Bancshares, Inc., at any time from July 1, 2005, through May 9, 2008. Excluded from the Class are the individual defendants, officers and directors of the corporate defendants, members of their immediate families, and the beneficiaries, heirs, successors, or assigns of any of the foregoing.

(Doc. #88 at p.1).

Plaintiffs claim that Defendants failed to act solely in the interest of the participants and beneficiaries and for the exclusive purpose of providing benefits to participants and their beneficiaries, with the required care, skill, prudence, and diligence. (Doc. #43 at p.14). More specifically, Plaintiffs state that by Defendants' acts and omissions in continuing Plan investment in company stock and/or in continuing company stock funds as investment alternatives under the Plan, they breached each of these fiduciary duties. (Doc. #43 at p. 14). Plaintiffs further claim that Defendants made false, misleading, incomplete, inaccurate disclosures and representations to the Plan's participants, and failed to disclose ANB's serious financial and regulatory difficulties to the Plan's participants, breaching their fiduciary duties to act solely in the interest of the participants and to act prudently. (Doc. #43 at p. 16). Plaintiffs contend that they and the proposed Class members relied upon and/or and are presumed to have relied upon Defendants' representations by directing that the Plan purchase company stock and/or by not directing that the Plan sell company stock, which reliance was to the detriment of Plaintiffs, the Class members, and the Plan, since the Plan purchased and/or held company stock and incurred losses on those investments, which losses resulted in reductions in the value of the Plan accounts of Plaintiffs and the Class members. (Doc. #43 at pgs. 16,18).

-3-

Finally, Plaintiffs contend that as fiduciaries with the authority to appoint and remove Trustees and members of the Plan Committee, ANB and Bancshares, acting through the Director Defendants, and the Director Defendants, who had or exercised that authority, had a duty to monitor the conduct of the Trustees and Plan Committee and that since these Defendants knew or should have known of the failures of the Trustees and Plan Committee to fulfill their fiduciary responsibility, they breached their fiduciary responsibility by failing to replace the Trustees and members of the Plan Committee with persons who would act to protect the Plan and its participants from making imprudent investments in Bancshares stock.[2]  (Doc. #43 at p. 19).

The Plan is a defined contribution or individual account plan, funded by employee and employer contributions, with benefits based solely upon the amounts contributed to the participants' account and any Plan income, expenses, gains, losses, and forfeitures from other accounts which may be allocated to such participants' accounts.  (¶ 22 of Complaint and Doc. #93 at p. 3).  The Plan is overseen by an Administrator (ANB) and the Trustees, who are empowered to invest the plan's assets.  (Doc. #91-1 at pgs. 849, 869).  In addition to receiving employer contributions in stock, participants were permitted to invest their own contributions in stock.  Participants were permitted to "liquidate" stock within their accounts, but, as the stock was not publicly traded, the Plan provided that "[e]mployer contributions, employer discretionary matching contributions and cash dividends remitted to the Plan shall be used to perform such Company Stock liquidation."  (Doc. #128-3 at pgs. 20-21 and 2004 Plan Amendment ¶¶ 4.13(a)

---

[2]In the Report and Recommendation entered by the undersigned and filed on September 20, 2010, addressing Defendants' Motion for Judgment on the Pleadings, the Court recommended that Defendant Plan Committee be dismissed from this action.  (Cot. #130).

-4-

and (d)).[3]

**The Failure of ANB Financial**

Plaintiffs contend that beginning in July 2005 or earlier, ANB increased the amounts of its brokered deposits (large deposits which brokers collect from multiple small sources and deposit in institutions offering the highest available interest rates) and its loans in the areas of real estate, construction and land development, and commercial and industrial lending. (¶ 24 of Complaint).

By mid 2005, ANB's brokered deposits totaled over $250 million, with total deposits over $500 million. By mid 2006, ANB's brokered deposits totaled $615 million, with total deposits at $823 million. By the end of 2007, ANB's brokered deposits totaled nearly $1.6 billion, with total deposits of nearly $1.8 billion. (¶¶ 26-28 of Complaint).

Between mid 2005 to the end of 2007, ANB's non-current real estate loans (a loan more

---

[3]In the present case, the 2004 Amendment to the Plan provides:

4.13(a) Pursuant to procedures established by the Administrator (the Participant Direction Procedures) and applied in a uniform nondiscriminatory manner, Participants and Former Participants may direct the Trustee, in writing (or in such other form which is acceptable to the Trustee), to invest all or a portion of their individual account balances in investment options permitted under the Plan and the Participant Direction Procedures with such options including but not limited to Self-Directed Brokerage Accounts as permitted by the Administrator. That portion of the interest of any Participant so directing will thereupon be considered a Participants Directed Account. A Participant's or Former Participant's ability to diversity company Stock allocated to the Participant's or Former Participant's Company Stock Account shall be made in accordance with subparagraph (d) of this Section.

. . .

(d)Diversification of Company Stock Account: A Participant or Former Participant with Company Stock allocated to such Participant's or Former Participant's Company Stock Account may elect to direct the Trustee in writing (or in such other form which is acceptable to the Trustee) to liquidate any portion or all of the Company Stock allocated to the Company Stock Account as of any Stock Valuation Date. A Participant's or Former Participant's election to liquidate Company Stock must be received by the administrator and Trustee no later than thirty (30) days following the end of such Stock Valuation Date upon which liquidation is to occur, and such liquidation shall be made at the fair market value of the Company Stock as of that Stock Valuation Date. Actual liquidation of the company Stock pursuant to this procedure shall occur within a reasonable period of time following receipt by the Administrator and Trustee of the valuation on Company Stock pursuant to Section 6.2 for such Stock Valuation Date. The proceeds of such liquidation shall be transferred to the Participant's or Former Participant's Directed Account and invested in accordance with the Participant's or Former Participant's investment elections.

Employer contributions, employer discretionary matching contributions and cash dividends remitted to the Plan shall be used to perform such Company Stock liquidation.

than 90 days past due) were in the 99th percentile for banks of its size in the categories of real estate, construction, and commercial loans. (¶¶ 29-30 of Complaint).

On February 22, 2007, Equity Solutions, LLC, provided an independent valuation of the Plan as of December 31, 2006, valuing the Plan's Bancshares stock at $36.90 per share.  (¶ 35 of Complaint).

On May 9, 2007, the Office of the Comptroller of the Currency ("OCC") reprimanded ANB, after concluding that "the bank was undercapitalized and had experienced substantial dissipation of assets and earnings due to unsafe and unsound practices."  The OCC announced that ANB "had incurred and is likely to incur losses that will deplete all or substantially all of its capital," and that its "unsafe and unsound practices also weakened the bank's condition and seriously prejudiced the interests of the bank's depositors and the deposit insurance fund."  ANB entered into a supervisory written agreement with the OCC that required, among other things, that ANB create and submit for OCC review a revised strategic plan that would address capital adequacy, risk reduction, and reduction in the volume of nonperforming assets.  (¶ 36 of Complaint).

As of July 7, 2007, Plan participant account statements valued Bancshares stock at $35.30 per unit.  (¶ 37 of Complaint).

On or about January 29, 2008, the Federal Reserve Bank took enforcement action against Bancshares.  The Reserve Bank issued a written agreement reprimanding Bancshares and directing it to submit for the Federal Reserve's approval a new capital plan "designed to ensure that the consolidated organization maintains an adequate capital position in light of its financial condition, risk profile, and planned growth."  (¶ 43 of Complaint).  On April 30, 2008, ANB

-6-

reported a net loss for 2007 of $120,427,000. (¶ 41 of Complaint). On May 9, 2008, the OCC

announced the closing of the bank, and appointed the FDIC as a receiver. (¶ 44 of Complaint).

The FDIC reported on behalf of the Plan that by December 31, 2007, the Plan had 387

participants. (Doc. #92-5 at p. 634-35, Doc. #93 at p. 4). The FDIC estimated that ANB's

failure would cost the Deposit Insurance Fund $214 million. (Doc. #94-1 at p. 938).

Approximately 230 employees initially lost their jobs when the bank was closed. (Doc. #94-7

at p. 3).

Plaintiff Jan Taylor was an employee of ANB or its predecessors for nine years, until

May 2008. At all relevant times, a portion of Taylor's retirement accounts have been invested

in one of more sub-funds of the Plan that held Bancshares stock. (Doc. #43 at ¶ 4). Jan Taylor

testified at her deposition that she understood that the account she had in the Plan was invested

in shares of ANB stock and knew that the stock was not publicly traded. (Doc. #103-3 at p. 6).

She believed that the fact that the stock was not publicly traded meant that only certain people

could buy it, "some people that invested at the beginning of the bank and then employees."

(Doc. #103-3 at p.6). It was her understanding that she could sell her ANB stock held in her

account at any time, but the one time she tried to sell it, for some reason, she was unable to.[4]

(Doc. #103-3 at p.7). Taylor stated that the reason she had her account invested in ANB stock

was because several people had told her it was a good investment. (Doc.#103-3 at p. 8). Mr.

Brannan, for whom Taylor directly worked, told Plaintiff Taylor that she needed to invest in

ANB stock - that it was such a good deal and the bank was growing. (Doc. #103-3 at p. 10).

---

[4] In Doc. #103-3, the pages that apparently explained why Plaintiff Taylor was unable to sell her ANB stock (pages 23 and 24) were omitted, so the Court does not know the reason.

Taylor stated that when the financial performance of the bank was discussed at various meetings, the last few months it was about building and expansion and how well the bank was doing. (Doc. #103-3 at p. 13). She did not remember seeing anything that said the bank had an "$82 million loss in 2007." (Doc. #103-3 at p. 19). Taylor further testified that she brought suit against Defendants because they "mishandled our 401(k)'s in different ways. They made us believe that the stock was worth so much, and bottom line, it wasn't worth anything." (Doc. #103-3 at p. 24). She further stated that she had not had any direct communication with any of the individual Defendants. (Doc. #103-3 at pgs. 24).

Plaintiff Laura T. Godsey was an employee of Bancshares for two and one-half years, until May 2008. At all relevant times, a portion of her retirement accounts have been invested in one or more sub-funds of the Plan that held Bancshares stock. (Doc. #43 at ¶ 6). Plaintiff Godsey testified at her deposition that when she first started participating in the ANB Plan, she made an election to have her entire account invested in ANB stock because she thought it was a good investment. (Doc. #103-2 at p. 30). During a period of time between July 2007 through September 2007, Godsey chose to have a portion of her account invested in the American Growth Fund, the American Washington Mutual or the American Am Cap Fund. (Doc. #103-2 at p. 31).

Plaintiff Carla C. Crosswhite was an employee of ANB or its predecessors for five years, until January 2005. At all relevant times, a portion of her retirement accounts have been invested in one or more sub-funds of the Plan that held Bancshares stock. (Doc.#43 at ¶5). In her deposition, Plaintiff Crosswhite stated that she elected to contribute a portion of her salary to the 401(k), but not to the stock. (Doc. #103-4 at p.7). She did not direct any of her contributions

that she was making under the 401(k) to be invested in ANB stock.  (Doc. #103-4 at p.7).

However, she had a rollover from her prior employment and invested all of it in ANB stock.

(Doc.#103-4 at p. 8).  Plaintiff Crosswhite stated that she invested her entire rollover in ANB

stock because it was recommended to her by Mr. Sandy Brannan, to whom she directly reported.

 (Doc. #103-4 at p. 10).  When she later advised Brannan that she had not yet decided what to

do with her rollover, he said he thought she really should consider investing it in ANB stock.

(Doc. #103-4 at p. 14).  Plaintiff Crosswhite stated that she believed she had the ability to sell

her ANB stock in the Plan as long as it went into a qualified retirement plan.  (Doc. #103-4 at

p. 17).  Her initial rollover amount was $29,227.10, and at the time immediately prior to the bank

closing, the ANB stock in her account was worth $297,000.  (Doc. #103-4 at p. 27).   She

recognized that she had the right when her employment was terminated on January 11, 2005, to

take a distribution of her account in cash if she wished, but did not take it because it was making

money.  (Doc. 103-4 at pgs. 29-30).  She further stated that she had no reason to believe it would

not continue to make money.  Crosswhite stated that the reason she brought suit was because she

wanted everyone to be compensated for the loss in the stock.  (Doc. #103-4 at p. 37).

According to Plaintiffs, during the class period, the Plan's tax filings reported well over

200 participants in each year.  (Doc. #93 at p. 12).

## II. Requirements for Class Certification

Plaintiffs' claims must satisfy the requirements of Fed.R.Civ.P. 23 in order for the Court

to certify this action as a class action.  "The proposed class must meet the criteria set out in Rule

23(a), commonly referred to as: (1) numerosity; (2) commonality; (3) typicality; and (4)

adequacy of representation."  Jones v. Novastar Financial, Inc., 257 F.R.D. 181, 186 (W.D. Mo.

2009); see also Rattray v. Woodbury County, IA., No. 09-2314, 2010 WL 3034898 at *3 (8th Cir. Aug. 5, 2010). In addition, the Plaintiffs' action must be maintainable as a class action under at least one of the three subsections of Fed.R.Civ. 23(b). Jones, 257 F.R.D. at 186.

The district court in Jones aptly stated some of the factors the Court should consider when ruling on a motion for class certification:

> In considering whether class certification is appropriate, the Court does not address the merits of the parties claims and defenses, but does probe behind the pleadings and look to what the parties must prove. (citations omitted). "In conducting this preliminary inquiry, however, the Court must look only so far as to determine whether, given the factual setting of the case, if the plaintiff[']s general allegations are true, common evidence could suffice to make out a prima facie case for the class." (citation omitted). Jones bears the burden of demonstrating that the proposed class meets Rule 23 requirements. (citations omitted). However, on a motion for class certification in an ERISA breach of fiduciary duty case, "the appropriate focus ... is the conduct of the defendants, not the plaintiffs." (citation omitted).

Id.; see also Rattray, 2010 WL 3034898 at *3)(the district court is accorded broad discretion to decide whether certification is appropriate).

Defendants do not address the numerosity requirement of Fed.R.Civ.P. 23(a). The Court, therefore, assumes that this requirement is not in dispute and will address the remaining Rule 23(a) factors.

## A. Fed.R.Civ.P. 23(a)

### 1. Commonality

Under Rule 23(a)(2), questions of law or fact common to the class must exist.[5] "Commonality is not required on every question raised in a class action." DeBoer v. Mellon Mortgage Co., 64 F.3d 1171, 1174 (8th Cir. 1995), cert. denied, 517 U.S. 1156 (1996). Rather,

---

[5]Some of Defendants' arguments concerning typicality overlap with issues relevant to commonality, but will be addressed as Defendants have classified them, in the discussion of typicality.

-10-

Rule 23 is satisfied when the legal question "'linking the class members is substantially related to the resolution of the litigation.'" Id. quoting Paxton v. Union National Bank, 688 F.2d 552, 561 (8th Cir. 1982), cert. denied, 460 U.S. 1083 (1983).   Courts have held that commonality is a "low hurdle" requirement that is easily surmounted. Lively v. Dynegy, Inc., No. 05-CV-00063, 2007 WL 685861 at *7 (S.D. Ill. Mar. 2, 2007). "[T]o satisfy commonality, a plaintiff need only show that there is 'at least one question of law or fact common to the class.'" Id. (citations omitted).

> Generally, commonality is satisfied as long as there is "[a] common nucleus of operative fact" as to the class members' claims.

Id. (citations omitted).   The Complaint identifies several common issues of law and fact, including: whether Defendants breached their duties of prudence and loyalty;  whether they violated ERISA;  as well as whether and to what extent the Plan was injured as a result. See Jones, 257 F.R.D. at 186.

### 2.  Typicality

Under Rule 23(a)(3), the class representatives' claims must be typical of the claims of the class.  "The burden of demonstrating typicality is fairly easily met so long as other class members have claims similar to the named plaintiff." DeBoer, 64 F.3d at 1174, citing Paxton, 688 F.2d at 561.  "The test of typicality is 'whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.'"  Lively, 2007 WL685861 at *9 (citations omitted).  "Typical does not mean identical, and the typicality requirement is liberally construed."  Id. (citation omitted).  "In general, typicality is established

-11-

if the claims of all members arise from a single event or share the same legal theory." In re Teflon Products Liability Litigation, 254 F.R.D. 354, 364 (S.D. Iowa 2008), citing Paxton, 688 F.2d at 561-62.  It is not necessary to first find that all putative class members share identical claims, and "[P]articularly, in ERISA claims where plaintiffs seek recovery for injuries to a plan rather than to themselves individually, class representatives' claims need not be identical to those of other individual class members." Jones, 257 F.R.D. at 187 (citations omitted).

In the instant case, the claims of the Plaintiffs and the proposed class members focus on issues surrounding Defendants' liability, such as:  whether ANB stock was an imprudent investment; whether Defendants properly communicated with the Plan and its participants regarding the ANB stock; whether Defendants breached their duties of prudence and loyalty; whether Defendants properly monitored other fiduciaries; whether the Plan and its participants were injured by Defendants' alleged breaches; and whether the class is entitled to relief.

Defendants argue that the Court must consider the highly individualized issues of proof that underlie Plaintiffs' prudence and misrepresentation claims in assessing whether Rule 23(a)'s requirements have been met, and state that it may even be reversible error not to engage in such analysis, citing to Langbecker v. Electronic Data Sys. Corp., 476 F.3d 299, 305, 315-16 (5th Cir. 2007).  (Doc. #103 at p. 7).  Defendants also rely heavily on the ruling in LaRue v. DeWolff, Boberg & Assocsiates., Inc., 552 U.S. 248 (2008), which Defendants argue makes it clear that courts can no longer simply assume that an action is brought on behalf of a plan "as a whole" just because it is pled under § 502(a)(2)(authorizes the Secretary, participant, beneficiary, or fiduciary to bring civil action for relief to the Plan).  Defendants argue that in the present case, Plaintiffs assert "inherently individual claims purportedly brought on behalf of the Plan based on alleged

-12-

misrepresentations and nondisclosures even though such claims are quintessentially personal (plans cannot be deceived, only people can)." (Doc. #103 at p. 8). Defendants argue that Plaintiffs allege investment losses with respect to ANB stock, even though participants controlled their accounts and could (and did) invest in ANB stock based on their individual circumstances. Therefore, it is urged that this is a "LaRue" case and that the Court's class certification analysis must account for the fact that every participant's claim is based on unique facts that must be individually proven. (Doc. #103 at p. 8).

The Court is not persuaded by Defendants application of Langbecker to this case or their interpretation of LaRue. Instead, the Court finds the analysis given by the district court in Jones, which was written after LaRue was decided, to be most persuasive on the issues raised by Defendants.

In Jones, which involved a 401(k) plan, the Court held that in ERISA claims where plaintiffs seek recovery for injuries to a plan rather than to themselves individually, class representatives' claims "need not be identical to those of other individual class members." Jones, 257 F.R.D. at 187 (citations omitted). "The typicality 'requirement is generally considered to be satisfied if the claims or defenses of the representatives and the members of the class stem from a single event or are based on the same legal procedure or remedial theory.'" Id., quoting Paxton, 699 F.2d at 562-63.

> Still, "[a] proposed class representative is not adequate or typical if it is subject to a unique defense that threatens to play a major role in the litigation." In re Milk Prods. Antitrust Litig., 195 F.3d 430, 437 (8th Cir. 1999). Though ERISA class representatives may have unique situations which make them more or less likely to prevail when faced with various defenses, such uniqueness does not necessarily render their claims atypical. Langbecker v. Electronic Data Sys. Corp., 476 F.3d 299, 314 (5th Cir. 2007)(citation omitted). The "key typicality

-13-

inquiry is whether a class representative would be required to devote considerable time to rebut Defendants' claims." <u>See</u>, <u>e.g.</u>, <u>id</u>. (finding that proposed class representatives' ERISA 's 502(a)(2) claims were typical despite their continued trading in company stock after adverse disclosures, where they alleged that "they suffered harm as Participants who lost money on [company] stock investments through the [Defendants'] imprudent Plan management").

<u>Jones</u>, 257 F.R.D. at 187.

As in <u>Jones</u>, Defendants argue in the present case that Plaintiffs' claims do not meet Rule 23(a)(3)'s typicality requirement in that they are subject to unique defenses regarding injury, misrepresentations and reliance. For example, Defendants refer to Mike Pyron, an employee of ANB and participant in the Plan, who left employment on September 5, 2002. In 2007, he elected to take a cash distribution from the Plan. In order to carry out this request, Mr. Pyron's 403.86 shares of ANB stock were sold at $36.60 per share, which was the then-current value as determined by the Plan's independent appraiser as of June 30, 2007, for a total distribution of $14,781.37. Defendants contend that the Court may take judicial notice of the fact that from July 1, 2005 to April 7, 2010, the S&P index rose a mere 0.56%, which means that Mr. Pyron's current account balance, assuming it had been invested in the S&P 500 index on July 1, 2005, would be $8,471.70. (Doc. #103 at p. 18). Defendants state that "Mr. Pryon is a 'winner' and benefitted (to the tune of over $6,000) by selling his ANB stock at the June 30, 2007 value. Defendants argue that under the injunctive relief sought by Plaintiffs, Mr. Pyron would be entitled to the lower amount, and would be required to reimburse the Plan for the difference between what he would be entitled to under the Plaintiffs' loss scenario and what he actually made on the ANB stock. Defendants argue that, in other words, Mr. Pyron is no longer a 'winner' if the class-wide relief is granted." (Doc.#103 at p. 18). The Court in <u>Jones</u> addressed

-14-

a similar argument, where Defendants attempted to show that the claims Plaintiff brought on

behalf of the plan were atypical in that she did not hold her NovaStar common stock as long as

other class members, and that unlike other class members, she did not purchase NovaStar

common stock during the Class Period.  Id. at 188.  The court quoted from DiFelice v. U.S.

Airways, Inc., 235 F.R.D. 70, 79 (E.D. Va. 2006):

> While it may be true that each Plan participant who invested in the Company Stock Fund
> has an 'optimal prudence date,' .... it is also true that the Plan has a single 'optimal
> imprudence date,' and as this lawsuit is brought on behalf of the Plan[. I]ndividual
> participants' 'optimal imprudence dates' are irrelevant.  To the extent members of the
> class, including the class representative, have interests with respect to this date that are
> slightly divergent with each other, or with the Plan itself, this slight divergence is greatly
> outweighed by shared interests in establishing [defendant's] liability.

Jones, 257 F.R.D. at 188-89.

The court in Jones concluded as follows:

> The claims of both Jones and the class members center on issues surrounding
> Defendants' liability, such as: whether Defendants were fiduciaries to the Plan; whether
> NovaStar common stock was an imprudent investment; whether Defendants properly
> communicated with the Plan and its participants regarding NovaStar common stock;
> whether Defendants took appropriate steps to monitor or investigate the offering or
> holding of NovaStar common stock; whether Defendants took adequate steps to protect
> the Plan; whether the Plan and its participants were injured by Defendants' alleged
> breaches; and whether the class is entitled to relief.  Though other class members – who
> Defendants seem to argue lost considerably more money than did Jones – may have
> suffered a greater dollar loss, their claims are united with Jones's in that they seek
> retribution for harm caused by Defendants to the Plan.

Id. at 189. (citation omitted)(emphasis added).

Defendants argue that the Supreme Court decision in LaRue undercuts Plaintiffs'

assertion that their claims are typical of other class members because LaRue allowed plan

participants to sue for recovery to individual accounts, regardless of whether other plan

participants suffered losses.  Id. at 189-190.  The Court in Jones found that such an argument

-15-

"reads too much into the <u>LaRue</u> analysis." <u>Id</u>. at 190.

> <u>LaRue</u> did not overrule that widely-accepted tenet of ERISA law....LaRue simply expanded the relief available under § 502(a)(2), so that recovery can now be had when a participant demonstrates that fiduciary misconduct affected his individual account. (citations omitted). ...Here, the common focus is on the conduct of Defendants: whether they breached their fiduciary duties to the Plan as a whole by paying excessive fees, whether they made imprudent investment decisions, and whether they concealed information from all Plan participants. <u>Plaintiffs' claims do not focus on injuries caused to each individual account, but rather on how the Defendants' conduct affected the pool of assets that make up the [plan].</u> (citation omitted). The Court agrees: <u>LaRue</u> does not eliminate the possibility of § 502(a)(2) class actions.

<u>Id</u>., citing <u>Kanawi v. Bechtel Corp</u>., 254 F.R.D. 102, 108-09 (N.D.Cal. 2008)(emphasis added).

This Court also believes that <u>LaRue</u> does not eliminate the possibility of § 502(a)(2) class actions.

Defendants contend that Plaintiffs' misrepresentation and nondisclosure claims are not appropriate for class treatment because individual questions of reliance predominate. (Doc. #103 at p. 23). The Court again refers to the <u>Jones</u> case, where a similar argument was presented.

> The question of whether plaintiffs must individually show reliance on § 502(a)(2) communications claims-and, thus, whether class treatment is appropriate-has not been settled by courts. (citations omitted). The Eighth Circuit has been silent on the issue. (citation omitted).
>
> Because ERISA § 502(a)(2) focuses on plans, rather than individuals, the Court finds persuasive those cases which have held that plaintiffs need not establish individual reliance in order to prevail. ...
> . . .
> Such an analysis is particularly appropriate where defendants make the alleged misrepresentations on a plan-wide basis. (citation omitted). Here, Jones does not allege that Defendants failed to disclose and misrepresented the health of NovaStar through personal communications to Plan participants; she alleges that they did so on a Plan-wide basis in fora such as Plan documents, annual reports, press releases, and public filings.
> Defendants' actions towards the Plan, not individual Plan participants, are relevant to Jones's communications claims. For purposes of class certification, what Jones individually "knew, and when, regarding the allegations of non-disclosure and concealment, does not defeat typicality." (citation omitted). Jones's claims are sufficiently typical of those of the class.

-16-

Id. at 190-91. The Court agrees with this analysis and finds that Plaintiffs' misrepresentation and nondisclosure claims are appropriate for class treatment.

Defendants also argue that they are entitled to the Section 404(c)[6] defense in this matter and that such application defeats class certification. They state that if a plan complies with § 404(c)'s requirements, then the participants - not the fiduciaries - are responsible for losses associated with any imprudent investment decisions they may have made. (Doc. #103 at p. 10). Defendants again rely heavily on the holding in Langbecker in support of their position, where the court referred to the Department of Labor's regulations, which implemented the Congressional purpose to qualify plans for this defense "only if, *inter alia,* they offer a diversified array of investments;  provide adequate information concerning the investments to the participants; and authorize flexible and autonomous control by the participants." Id., 476 F.3d at 309 (referencing 29 C.F.R. § 2550.404c-1 (2005)).   The Langbecker Court found that the district court incorrectly eliminated the § 404(c) defense from its evaluation of the suitability of the allegations on appeal for class treatment, and vacated and remanded the matter for further consideration of the extent to which § 404(c) decisions by participants undermined the feasibility of class action treatment.  Id. at 313.  The Court stated:

> In some situations, as happened here, many of the Participants will react to the company's bad news by buying *more* of its stock. Other Participants will, like Mizell,

---

[6]ERISA 's 404(c), 29 U.S.C. 'S 1104(c), entitled "Control over assets by participant or beneficiary" provides:
 (1)(A) In the case of a pension plan which provides for individual accounts and permits a participant or beneficiary to exercise control over the assets in his account, if a participant or beneficiary exercises control over the assets in his account (as determined under regulations of the Secretary - (i) such participant or beneficiary shall not be deemed to be a fiduciary by reason of such exercise, and (ii) no person who is otherwise a fiduciary shall be liable under this part for any loss, or by reason of any breach, which results from such participant's or beneficiary's exercise of control, except that this clause shall not apply in connection with such participant or beneficiary for any blackout period during which the ability of such participant or beneficiary to direct the investment of the assets in his or her account is suspended by a plan sponsor of fiduciary.

trade their way to profit no matter the calamity that befell the stock.  Section 404(c) contemplates an individual, transactional defense in these situations, which is another way of saying that in participant-directed plans, the plan sponsor cannot be a guarantor of outcomes for participants.

Id. at 312.

Plaintiffs argue that Defendants did not plead § 404(c) as an affirmative defense, which is true.  However, even had the Defendants raised such affirmative defense, the Court agrees with Plaintiffs that Defendants' argument would nevertheless fail, for the following reasons:

First, Plaintiffs contend, and Defendants do not address, that Defendants never state or show that the Plan is a § 404(c) plan, as required by 29 C.F.R. § 2550.404c-1.[7]

Next, even if 404(c) applied, it would not defeat class certification, because the defense would not be unique to the claims of the named Plaintiffs, Defendants would presumably argue that it applied to all Plan participants, and the assertion of the defense does not raise individual issues.  The Court fails to see why the 404(c) defense would be unique to Plaintiffs' claims and would not apply to the claims of all of the members of the proposed class.  See Lively, 2007 WL

---

[7] (b) ERISA section 404(c) plans –
   (1) In general.  An "ERISA section 404(c) Plan" is an individual account plan described in section 3(34) of the Act that:
      ...
      (2) B) The participant or beneficiary is provided or has the opportunity to obtain sufficient information to make informed decisions with regard to investment alternatives available under the plan, and incidents of ownership appurtenant to such investments. For purposes of this subparagraph, a participant or beneficiary will not be considered to have sufficient investment information unless--

   1. (1) The participant or beneficiary is provided by an identified plan fiduciary (or a person or persons designated by the plan fiduciary to act on his behalf):
   (I) An explanation that the plan is intended to constitute a plan described in section 404(c) of the Employee Retirement Income Security Act, and title 29 of the Code of Federal Regulations, § 2550.440c-1, and that the fiduciaries of the plan may be relieved of liability for any losses which are the direct and necessary result of investment instructions given by such participant or beneficiary;

29 C.F.R. § 2550.404c-1.

-18-

685861 at *10.  As stated by Plaintiffs, it is clearly Defendants' position in this case that they bear no responsibility for the Plan losses at issue in light of the control Plan participants exercised over the investment of their accounts in ANB stock.  Furthermore, it does not appear that a unique defense exists with respect to the named Plaintiffs that would consume the merits of the case.  Id.

Accordingly, the Court does not believe the 404(c) defense defeats class certification in this case.

### 3.  Adequacy of Representation

"The focus of the adequacy inquiry is whether '(1) the class representatives have common interests with the members of the class, and (2) whether the class representatives will vigorously prosecute the interests of the class through qualified counsel.'" Jones, 257 F.R.D. at 191, quoting Paxton, 688 F.2d at 562-63.  This inquiry serves to uncover conflicts of interest between named parties and the class they seek to represent.  Amchem Products., Inc. v. Windsor, 521 U.S. 591, 625 (1997).

In the present case, Defendants argue that the threat of intra-class conflicts is manifest in this case because the named Plaintiffs seek relief that would directly benefit certain class members while at the same time seriously hurting other members of the class.  (Doc. #103 at p. 18).  In support of their position, Defendants once again refer to Mike Pryon, an employee of ANB Financial and participant in the ESOP, who left employment in 2002 and sold his stock for $14,781.37, based upon a 2007 appraisal.

The Court is not persuaded by Defendants' argument.  For the reasons the Court rejected Defendants' same arguments with regard to typicality, the Court rejects them as to adequacy.

-19-

See Jones, 257 F.R.D. at 192. "[I]n an action seeking to recover on behalf of a plan, the focus is on the impact of the defendants' actions on that Plan." Id. The differences between Plaintiffs' personal claims and those of other class members are outweighed by their common interests in establishing that Defendants are liable to the Plan. Id.

In their Supplement to Their Opposition to Plaintiffs' Motion for Class Certification (Doc. #112), Defendants assert that the Plan records show sixteen (16) participants who transferred amounts in excess of $5,000 out of the ANB Stock fund during the years 2006-2007, and under the injunctive relief sought by Plaintiffs, these sixteen people would almost certainly recover less as class members, and "would therefore be required to reimburse the plan for the difference between what they received from the sale of their ANB Stock and the lower recovery they would receive as a member of the putative class." (Doc. #112 at p. 1-2). Defendants base this information on the Declaration of Thomas Ito, a paralegal with Morgan Lewis & Bockius, LLP, who reviewed data presented to him by the record keeper for ANB Financial, N.A. ESOP, Hand Benefits & Trust. (Doc. 112-1 at p.1).

In response to Defendants' Supplement, Plaintiffs question Mr. Ito's credibility and lack of expertise in providing his analysis, and ask that they be allowed to take Mr. Ito's deposition and submit additional briefing in the event the Court is inclined to consider his opinion. (Doc. #120 at p. 3-6). Plaintiffs also state that Defendants have provided absolutely no authority for their "disgorgement" argument, and that "[W]hile disgorgement of *ill-gotten* gains is an available remedy against *fiduciaries,* under ERISA § 409 - the only provision under which Plaintiffs have sued - there is no cause of action of any kind against non-fiduciaries under that section." (Doc. #120 at p. 6-7).

-20-

Defendants have provided the Court with no authority regarding their "disgorgement"

theory and there is no mechanism by which participants who may have benefitted from the sale

of their stock during the relevant time period can be forced to disgorge such gains as a result of

Plaintiffs' claims.  Furthermore, as stated earlier, variation among plan participants does not

defeat class certification, since Plaintiffs are seeking recovery on behalf of the Plan.

**B.  Fed.R.Civ. 23(b)**

**1.  Rule 23(b)(1)(B)**

Having found that Plaintiffs have satisfied the requirements of Fed.R.Civ.P. 23(a), the

Court must now ascertain whether Plaintiffs' action is maintainable as a class action under at

least one of the three subsections of Fed.R.Civ. 23(b).[8]  Rule 23(b)(1)(A) attempts to avoid

possible prejudice to Defendants, while Rule 23(b)(1)(B) attempts to avoid possible prejudice

---

[8]Fed.R.Civ.P. 23(b) provides: Types of Class Actions.  A class action may be maintained if Rule 23(a) is satisfied
and if:
    (1) prosecuting separate actions by or against individual class members would create a risk of:
    (A) inconsistent or varying adjudications with respect to individual class members that would
    establish incompatible standards of conduct for the party opposing the class; or
    (B) adjudications with respect to individual class members that, as a practical matter would be
    dispositive of the interests of the other members not parties to the individual adjudications or would
    substantially impair or impede their ability to protect their interests;
    (2) the party opposing the class has acted or refused to act on grounds that apply generally to the class,
    so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as
    a whole: or
    (3) the court finds that the questions of law or fact common to class members predominate over any
    questions affecting only individual members, and that a class action is superior to other available
    methods for fairly and efficiently adjudicating the controversy.  The matters pertinent to these
    findings include:
    (A) the class members' interests in individually controlling the prosecution or defense of separate
    actions;
    (B) the extent and nature of any limitation concerning the controversy already begun by or against
    class members;
    (C) the desirability or u ndesirability of concentrating the litigation of the claims in the particular
    forum; and
    (D) the likely difficulties in managing a class action.

AO72A
(Rev. 8/82)

to class members.[9] <u>Jones</u>, 257 F.R.D. at 193. (citation omitted).  The Court also notes that

"[C]lass members in a 23(b)(3) class are free to 'opt out' while, under the majority rule, class

members in a 23(b)(1)(A) or 23(b)(1)(B) class cannot 'opt out.'" <u>In re Federal Skywalk Cases</u>,

680 F.2d 1175, 1178 (8th Cir. 1982), <u>cert. denied</u>, 459 U.S. 988 (1982)(citation omitted).

Plaintiffs first argue that the class should be certified under Rule 23(b)(1)(B), stating that

"[B]reach of fiduciary duty claims brought under § 502(a)(2) are paradignmatic examples of

claims appropriate for certification as a Rule 23(b)(1) class, as numerous courts have held."  <u>In</u>

<u>re Schering Plough Corp. ERISA Litigation</u>, 589 F.3d 585, 604 (3rd Cir. 2009).  As referenced

by Plaintiffs, the Advisory Committee Note to Rule 23(b)(1)(B) indicates that the Federal Rules

drafters believed Rule 23(b)(1)(B) to be the most natural and appropriate basis for class

certification in an ERISA breach of fiduciary claim.

> The same reasoning applies to an action which charges a breach of trust by an indentured
> trustee on other fiduciary similarly affecting the members of a large class of security
> holders or other beneficiaries, and which requires an accounting or like measures to
> restore the subject of the trust.

Fed.R.Civ.P. 23(b)(1)(B) Advisory Committee Note (1966 Amendment).  In the present case,

the Court's adjudication of whether Defendants breached their fiduciary duties will, as a practical

matter, dispose of the class members' claims in those regards.  <u>See</u> <u>Jones</u>, 257 F.R.D. at 192-94.

Defendants argue that certification under Rule 23(b)(1)(B) is inappropriate because

separate actions would not alter the rights of putative class members.  (Doc. #103 at p. 29).  The

Court finds the language in <u>Schering Plough</u> to be persuasive on this point:

---

[9]Because Rule 23(b)(1) does not provide opt-out protections, the Rule is interpreted narrowly. <u>Id.</u> (citation
omitted).  While notice to the class is not mandatory, it is within courts' discretion to order notice. <u>Id.</u>, <u>see</u>
Fed.R.Civ.P. 23(c)(2)(A).

> [a] class should be certified under Rule 23(b)(1)(B) when "prosecuting separate actions by or against individual class members would create a risk of ... adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests."  Fed.R.Civ.P. 23(b)(1)(B).  This is clearly the case here, where Wendel's proofs regarding defendants conduct will, as a practical matter, significantly impact the claims of other Plan participants and of employees who invested in the Stock Fund.  Wendel's claims are based on defendants' conduct, not, as defendants urge, on unique facts and individual relationships.

Id. at 604.  In the present case, Plaintiffs' proof regarding Defendants' conduct will significantly impact the claims of other participants who invested in ANB stock under the Plan and are based upon Defendants' conduct rather than on unique facts and individual relationships.  In addition, the Court in Schering Plough also dealt with the 404(c) defense, stating:

> Given that it is an ERISA § 502(a)(2) claim brought on behalf of the Plan and alleging breaches of fiduciary duty on the part of defendants that will, if true, be the same with respect to every class member, Rule 23(b)(1)(B) is clearly satisfied, and the § 404(c) defense is not relevant.

Id. at 604-05.  The Court believes that Rule 23(b)(1)(B) is the proper vehicle for class certification.

## 2. Rule 23(b)(1)(A)

Plaintiffs argue that the requirements of Rule 23(b)(1)(B) are met, and alternatively or additionally, that the action is maintainable under Rule 23(b)(1)(A).  (Doc. #93 at 17-21).  Although it is unnecessary for the Court to reach potentially applicable subsections of Rule 23(b), the Court nevertheless believes that the action would also be maintainable under Rule 23(b)(1)(A).  "Rule 23(b)(1)(A) certification is particularly appropriate where a central element of plaintiffs' claims are not an individual matter; here the central questions concerning whether the fiduciaries breached their duties to the Plan are not individual."  Jones, 257 F.R.D. at 194.

-23-

(citation omitted).

The Court believes that the central element of Plaintiffs' claims are whether the Defendants breached their duties to the Plan, and are not individual. Accordingly, the class in the present case is maintainable under Rule 23(b)(1)(B) and Rule 23(b)(1)(A).

### 3. Rule 23(g)

Rule 23(g) states that when a Court certifies a class, the Court must appoint class counsel, and sets forth the factors the Court must consider in appointing counsel.[10] In the present case, Defendants do not address the Plaintiffs' contention regarding adequacy of counsel, and the Court, therefore, assumes that the issue is not disputed. Nevertheless, the Court has considered the factors set forth in Rule 23(g) as well as Plaintiff's exhibits, and believes that Plaintiffs' counsel is adequate under Rule (g)(1) and (4) as required by Rule 23(g)(2).

---

[10]Rule 23(g) provides:
(g) Class counsel.
   (1) appointing Class Counsel. Unless a statute provides otherwise, a court that certifies a class must appoint class counsel. In appointing class counsel, the court:
     (A) must consider:
      (i) the work counsel has done in identifying or investigating potential claims in the action;
      (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;
      (iii) counsel's knowledge of the applicable law; and
      (iv) the resources that counsel will commit to representing the class;
     (B) may consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class;
     (B) may consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class;
     (C) may order potential class counsel to provide information on any subject pertinent to the appointment and to propose terms for attorney's fees and nontaxable costs;
     (D) may include in the appointing order provisions about the award of attorney's fees or nontaxable costs under Rule 23(h); and
     (E) may make further orders in connection with the appointment.
   (2) Standard for Appointing Class Counsel. When one applicant seeks appointment as class counsel, the court may appoint that applicant only if the applicant is adequate under Rule 23(g)(1) and (4). If more than one adequate applicant seeks appointment, the court must appoint the applicant best able to represent the interests of the class.
   (3) Interim Counsel. The court may designate interim counsel to act on behalf of a putative class before determining whether to certify the action as a class action.
   (4) Duty of Class Counsel. Class counsel must fairly and adequately represent the interests of the class.

-24-

### C.  Notice

Although Rule 23(b)(1) does not require notice to class members, Rule 23(c) allows the Court to direct appropriate notice to the class.  As was done by the Court in <u>Jones</u>, the Court finds it appropriate to notify class members that their interests are being represented with regard to the claims in this case.  <u>Id</u>. ("Particularly, in light of the current economic climate, in which many are worried about the state of their retirement accounts, the Court finds it appropriate to notify class members that their interests are being represented with regard to the claims in this case.") The Plaintiffs should be required to provide the Court with the form of notice that should be provided to the members of the class.

### III.  Conclusion

Based upon the foregoing, the Court recommends that Plaintiffs' Motion for Class Certification be granted and that Plaintiffs should be required to provide the Court with the form of notice that should be provided to the members of the class.

**The parties have fourteen days from receipt of our report and recommendation in which to file written objections pursuant to 28 U.S.C. 636(b)(1).  The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

IT IS SO ORDERED this 18th day of October, 2010.

*/s/ Erin L. Setser*
HONORABLE ERIN L. SETSER
UNITED STATES MAGISTRATE JUDGE

-25-